Michael PHENOW, Plaintiff,

v.

JOHNSON, RODENBERG &
LAUINGER, PLLP, and
Joel Boon, Defendants.

Civ. No. 10–2113 (DWF/JJK).

United States District Court,
D. Minnesota.

March 1, 2011.

Randall P. Ryder, Samuel J. Glover, The Glover Law Firm, LLC, Minneapolis, MN, for Plaintiff.

David A. Barnes, Attorney at Law, Minneapolis, MN, for Defendant.

## ORDER AND MEMORANDUM

JEFFREY J. KEYES, United States Magistrate Judge.

**IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Attorney Fees and Costs (Doc. No. 27), is **GRANTED IN PART.** Defendants shall pay Plaintiff attorney fees in the amount of $10,714.00, plus costs in the amount of $412.70, for a total of $11,126.70; and

2. The attached Memorandum is incorporated herein by reference.

### *MEMORANDUM*

At a settlement conference on December 22, 2010, the parties agreed to settle this matter for $1,000 in statutory damages, plus attorney fees and costs to be determined by this Court. The parties thus left it up to this Court to use its discretion to determine what the reasonable attorney fees would be in this matter. Plaintiff has submitted a petition for attorney fees in the amount of $13,392.50, and costs in the amount of $412.77. Defendant counters by requesting that the Plaintiffs attorney fees be set at "no more than $1,000." (Doc. No. 33, Defs.' Mem. of Law in Opp'n to

Pl.'s Mot for Att'y Fees and Costs ("Defs.' Opp'n") 13.)

Plaintiff filed the Complaint in this action on May 21, 2010, seeking to recover damages for the Defendants' alleged violation of various provisions of the Fair Debt Collection Practices Act ("FDCPA") and for violation of the automatic bankruptcy-stay rule. The single act in issue involved the Defendant debt-collection firm sending a communication directly to Plaintiff at a time when the Plaintiff was represented by a bankruptcy attorney. Plaintiff contended, in this lawsuit, that the FDCPA prohibited the debt collector from communicating with anyone other than a person's attorney once the debt collector knows that the person is represented by an attorney. *See* 15 U.S.C. § 1692b(6). Defendants agreed to settle this matter by paying Plaintiff $1,000, the full statutory damage amount allowed by the FDCPA, plus reasonable attorney fees to be determined by this Court.

▮ The Court will apply the traditional "lodestar" method for the determination of the reasonableness of the attorney fees sought in this matter. The lodestar method has been established as the "most useful starting point for determining the amount of a reasonable fee," and requires a court to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The reasonableness of a fee depends upon a number of factors, including "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir.1997). Courts also consider the prevailing market rate for similar services in the community where the litigation takes place when performed by a "lawyer of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir.1988). The fee applicant bears the burden to produce evidence to support the rates charged and hours worked. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *see also Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (noting that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").

## A. Hourly Rates

▮ Plaintiff's lead attorney, Samuel Glover, seeks a rate of $350 an hour for his work on this case. This is a reasonable hourly rate for Mr. Glover's time in this case consistent with attorney-fee awards in this district for lead attorneys in similar types of cases. *See Gorton v. Debt Equities, LLC*, Civ. No. 08–4817, Doc. No. 26 (D.Minn. July 13, 2009) (finding rates of $350 per hour for first chair and $235 for second chair in a FDCPA case reasonable); *Hixon v. City of Golden Valley*, Civ. No. 06–1548, Doc. No. 170 (D.Minn. December 13, 2007) (finding a rate of $400 per hour reasonable and consistent with prevailing market rates in a § 1988 case); *Peterson v. Ford Motor Co.*, Civ. No. 03–5027, 2006 WL 3030885, *2–*3 (D.Minn. Oct. 11, 2006) (approving hourly rates of $350 and $265 in MHRA case). Mr. Glover is a leading member of the consumer-protection bar who practices regularly before this district and has the level of skill, experience, and reputation that justifies the rate applied for in this case.

This Court also finds that the hourly rate sought for Mr. Glover's associate, Randall P. Ryder, of $225 per hour is a reasonable hourly rate. This rate is consistent with hourly rate awards in this district for work by associate or "second chair" attorneys in similar types of cases. *See Gorton*, Civ. No. 08–4817, Doc. No. 26 (D.Minn. July 13, 2009) (finding rate of $235 per hour for second chair in a FDCPA case reasonable). This Court also draws upon its considerable experience in working with associates in federal court litigation in concluding that this is a reasonable hourly rate for Mr. Ryder's time.

Although the Defendants complain that the hourly rates sought by the Plaintiff in this case are too high, Defendants have not disclosed the hourly rates charged by Defendants' counsel in this case. While the Defendants had no obligation to disclose these rates, the Defendants have passed up the opportunity to demonstrate that the prevailing rate for the type of work in this case is, in fact, at or below the hourly rate sought by the Plaintiff, by showing the Court that the Defendants' counsels' own hourly rates were substantially less than the rates sought by Plaintiff's counsel. The Court also notes that the skill-set that must be brought to bear by the litigation counsel in a consumer-protection case in federal court is comparable to that of any attorney who must litigate a complex federal statutory scheme through the federal court system, whether the federal case involves employment statutes, civil rights law, or the myriad other federal statutes that provide damage remedies. There is a level of skill required in litigating cases in federal court that has to be taken into account in determining the fee award.

## B. Hours Expended

The Court has carefully reviewed the time records of Mr. Glover and Mr. Ryder to determine whether a reasonable amount of time was spent prosecuting this case. The Court notes that there was a considerable amount of time spent by Plaintiffs attorneys in this case that was required as a result of the vigorous defense. In particular, Plaintiff's attorneys were required to spend a considerable amount of time on the motion to dismiss in this case, including researching the law, brief writing, and arguing in court. The Court notes in addition that the Plaintiffs attorneys attempted to try to save time on this case by proposing a stipulation of facts that would have foreclosed the need for discovery. Although they were not successful in their efforts to obtain such a stipulation, this was still a sensible way to proceed to keep the costs of the case down. The Court does not in any way criticize the Defendants for their vigorous defense of the case (indeed, the Defendants were successful on part of the motion to dismiss), but the Plaintiffs attorneys were duty bound to in turn zealously advocate in their client's interest in the case.

In reviewing the time records of the Plaintiff's counsel, however, the Court has determined that some of the time spent does fall into the unreasonable category. For example, the records reflect time spent by attorneys performing non-legal tasks, time spent on pleadings that had to be amended as a result of drafting errors, and too much time spent on boilerplate discovery requests. In addition, there appears to have been some unnecessary duplication in effort of attorneys Glover and Ryder. It is, of course, impossible for the Court to do a precise recalculation of the time that should have been expended on the various tasks. But based upon the Court's own experience and its review of the work performed in this case, the Court discounts the Plaintiff's attorney-fee request by 20%. Defendants have raised no objection to the Plaintiffs costs of $412.70.

## C. Proportionality

 Defendants argue that Plaintiff should not receive attorney fees more than $1,000 because all that Plaintiff obtained out of this litigation was a settlement of $1,000, the maximum statutory amount provided for by the FDCPA. However, the amount of attorney fees need not be proportionate to the amount of damages recovered when Congress sets up a statutory scheme, such as this one, that provides for statutory damages and fee shifting. *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir.1993) (acknowledging that "proportionality between the amount of damages and fee awards was not required"). Just like civil-rights statutes, the consumer-protection statutes, including the FDCPA and the FCRA, are designed to make it possible for consumers to prosecute violations of the law and thus incentivize defendants to behave in a way that does not violate consumers' legitimate interests. The U.S. Supreme Court has previously considered the question of proportionality in attorney-fee awards for civil-rights violations and rejected the proposition that "fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recover." *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). The Supreme Court reasoned that—

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id.* Similarly, in the context of the Fair Credit Reporting Act ("FCRA"), the Fourth Circuit held the following:

> Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987). The proportionality argument was also rejected in this district in an FDCPA case, *Armstrong v. Rose Law Firm, P.A.*, Civ. No. 00–2287 (MJD/SRN), 2002 WL 31050583 *5 (D.Minn. Sept. 5, 2002), where the defendant contended that awarding the plaintiff $40,000 in fees would create a windfall since the Plaintiff's damages totaled only $1,000. The court found that the plaintiff did not choose to create the disparity, and although the defendant had a right to aggressively defend the case, doing so caused a large amount of litigation, and greatly increased the number of hours the plaintiff's attorney had to expend. *Id.; see also Bankey v. Phillips & Burns, LLC*, Civ. No. 07–2200, 2008 WL 2405773, *1, *6 (D. Minn. June 11, 2008) (awarding $28,770.50 in attorney fees and $4,859.90 in costs after plaintiff accepted an offer of judgment of $2,500 for an FDCPA violation).

In the end, the Court's job is to determine whether the fee request by Plaintiff is reasonable in light of all of the particular circumstances of the case before the Court, including the amount of time that was reasonably necessary to obtain the relief provided for by Congress for consumers. In this case, the Court concludes that the amount of Plaintiff's attorney fees to be paid by Defendants is $10,714.00, plus costs of $412.70, for a total of $11,126.70.