2012 CO 38

**MERCANTILE ADJUSTMENT BUREAU, L.L.C., Petitioner/Cross–Respondent**

**v.**

**Elizabeth FLOOD, Respondent/Cross–Petitioner.**

No. 10SC852.

Supreme Court of Colorado, En Banc.

May 29, 2012.

Rehearing Denied June 18, 2012.

Polsinelli Shughart PC, Sean R. Gallagher, Bennett L. Cohen, Adam L. Plotkin, P.C., Adam L. Plotkin, Steven J. Wienczkowski, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent.

Pendleton Friedberg Wilson & Hennessey, P.C., Richard F. Hennessey, Susan M. Hargleroad, Denver, Colorado, Berg Hill Greenleaf & Ruscitti LLP, Alan C. Friedberg, Gary Merenstein, Attorney at Law, Gary Merenstein, Boulder, Colorado, Attorneys for Respondent/Cross–Petitioner.

Hizer Paul Grueskin LLP, Edward T. Ramey, Denver, Colorado, ACA International, Aaron Geist, Litigation Counsel, Minneapolis, Minnesota, Attorneys for Amicus Curiae ACA International.

The Colorado Bar Association, David L. Masters, Holland & Hart, LLP, Marcy G. Glenn, Husch Blackwell LLP, Michael H. Berger Denver, Colorado, Attorneys for Amicus Curiae Colorado Bar Association.

Leventhal, Brown & Puga, P.C., David P. Mason, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Chief Justice BENDER delivered the Opinion of the Court.

¶ 1 In this appeal, we review the order of the district court holding that an attorney does not violate Rule 1.8(e) of the Colorado Rules of Professional Conduct when he pays the fees of an appellate attorney retained to represent his client on appeal.

¶ 2 After losing on her Colorado Fair Debt Collection Practices Act claim at the county court, Elizabeth Flood's trial counsel, Gary Merenstein, paid the fees of several appellate attorneys who represented Flood in an appeal to the district court and later to this court because they were not willing to work on a contingency basis. Flood ultimately prevailed in her appeal to this court, and we awarded attorneys' fees. On remand to the county court to determine Flood's entitlement to and the amount of the attorneys' fees, the opposing party, debt collector Mercantile Adjustment Bureau ("MAB"), argued that Flood was not entitled to receive attorneys' fees for her appellate counsel's work. MAB argued that the arrangement between Merenstein and Flood, wherein he agreed to pay her appellate attorneys' fees and expected to be reimbursed for these fees from any court award of attorneys' fees received by Flood, constituted unethical financial assistance of a client in violation of Rule 1.8(e) of the Colorado Rules of Professional Conduct. The county court rejected MAB's argument and awarded Flood the requested attorneys' fees. MAB appealed to the district court, which affirmed the county court.

¶ 3 We hold that Merenstein did not violate Rule 1.8(e) by paying the fees of Flood's appellate counsel and therefore affirm the district court's decision in part. However, we conclude that the district court erred in applying the Colorado Appellate Rules, which require an appellee to make her request for attorneys' fees in her answer brief, to an appeal to the district court from the county court. The Colorado Appellate Rules are expressly applicable only to appeals to the court of appeals and to this court. We accordingly reverse that part of the district court's ruling applying the Colorado Appellate Rules to deny Flood's request for attorneys' fees incurred in the current appeal. We remand the case to the district court to return it to the county court for proceedings to determine whether Flood is entitled to appellate fees as the prevailing party in this appeal and, if so, the amount of Flood's reasonable attorneys' fees and costs incurred in connection with this appeal—including the proceedings before this court.

## I. Facts and Proceedings Below

¶ 4 Elizabeth Flood filed suit in county court under the Colorado Fair Debt Collection Practices Act based on a letter she

received from debt collector MAB regarding a debt that Flood owed on the purchase of a used automobile. Flood alleged that this debt collection communication failed to include necessary information and contained contradictory statements about her rights and obligations under the Fair Debt Collection Practices Act, in violation of section 12–14–109, C.R.S. (2011). Flood also alleged that MAB's outsourcing of the printing and the mailing of its communications constituted an impermissible communication with a third party under section 12–14–105(2), C.R.S. (2011), of this act.

¶ 5 The county court entered judgment in favor of MAB. Flood's trial counsel, Gary Merenstein, believed that he lacked the appellate experience and knowledge necessary to appeal competently. With Flood's knowledge and pursuant to the written agreement between Merenstein and Flood permitting Merenstein to hire outside counsel to assist with the case, Merenstein hired an appellate attorney to pursue an appeal to the district court. Merenstein did this with the understanding that he would be reimbursed for these expenses from any appellate attorneys' fees awarded in the event that Flood prevailed—that is, any attorneys' fees awarded to Flood for any appellate attorneys' work would go to him and not to any appellate attorneys who had already been paid by Merenstein.

¶ 6 The district court affirmed the county court's ruling against Flood.[1] After filing a petition for certiorari with this court, Flood's initial appellate attorney withdrew. Merenstein then hired another law firm to serve as appellate counsel, which has represented Flood from that point continuing to the case before us.[2] Unlike Merenstein, none of Flood's appellate attorneys were willing to work on her case on a contingency basis, so Merenstein advanced their fees. Meren-

stein, a sole practitioner, incurred substantial personal debt as a result of paying these fees.

¶ 7 We granted Flood's petition for certiorari review of the district court's ruling ("the first appeal"). We concluded that MAB violated section 12–14–109 because its letter was likely to confuse the least sophisticated consumer about the necessary means of communicating with MAB and also contained conflicting deadlines, further clouding the consumer's understanding of her legal rights under the Colorado Fair Debt Collection Practices Act. *Flood v. Mercantile Adjustment Bureau,* 176 P.3d 769, 774 (Colo.2008). We therefore reversed that portion of the district court's opinion. We affirmed the district court's holding that MAB's use of an automatic mailing service to prepare and mail its debt collection communication did not violate the prohibition in section 12–14–105(2) against communications between a debt collector and third parties regarding the collection of a debt because it was "a *de minimis* communication with a third party that cannot reasonably be perceived as a threat to the consumer's privacy or reputation." *Id.* at 777. We remanded the case to the district court with directions to return it to the county court for an entry of judgment consistent with our opinion and to determine whether Flood was entitled to damages, costs, and attorneys' fees pursuant to section 12–14–113, C.R.S. (2011), which provides for an award of attorneys' fees for prevailing plaintiffs in claims brought under the Colorado Fair Debt Collection Practices Act. *Id.*

¶ 8 On remand, MAB claimed that it was entitled to the bona fide error defense contained in section 12–14–113(3), wherein a debt collector may not be held liable if the debt collector "shows by a preponderance of evidence that the violation was not intentional or grossly negligent and which violation

---

1. The district court found that one of Flood's claims under the Fair Debt Collection Practices Act lacked substantial justification and that MAB was entitled to reasonable attorneys' fees incurred in defending against that claim pursuant to section 13–17–102(4), C.R.S. (2011). We denied certiorari on this issue in the first appeal. On remand to the county court while the first appeal was still pending, the county court awarded $6,595 in attorneys' fees to MAB. The judg-

ment was entered jointly and severally against Flood and Merenstein.

2. These same appellate attorneys also represented Merenstein, pursuant to a separate agreement, in defending against the attorneys' fees sanction award against him on remand to the county court. *See supra* note 1.

resulted from a bona fide error...." § 12–14–113(3). The county court ruled that our remand directed the court to determine fees and costs and therefore MAB's bona fide error defense was not within the scope of the remand. MAB appealed this issue to the district court, which rejected MAB's arguments and affirmed the county court ("the second appeal").

¶ 9 The case was returned to the county court, which conducted a hearing on the issue of an award of statutory damages and attorneys' fees. At this hearing, MAB argued for the first time that Merenstein violated Rule 1.8(e) of the Colorado Rules of Professional Conduct by paying the fees of Flood's appellate attorneys. MAB contended that Merenstein's payment of these fees constituted improper financial assistance of a client under Rule 1.8(e) and thus MAB should not be required to pay these fees to Flood who would then reimburse Merenstein for this unethically incurred expense. In a ten-page order, the county court rejected MAB's argument and held that Flood, as the prevailing party, was entitled to statutory damages, attorneys' fees, and costs.

¶ 10 The court awarded Flood the maximum amount of statutory damages of $1,000. To determine the reasonable amount of attorneys' fees to which Flood was entitled, the court applied the "lodestar" method. Under the lodestar method, the court calculates the reasonable amount of attorneys' fees by determining the number of hours reasonably expended on the litigation and then multiplying that number by a reasonable hourly rate. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Based on its lodestar calculation, the court awarded Flood $190,000 in attorneys' fees from the trial and the first and second appeals, as well as her costs. This amount vastly exceeded the $1,000 damages award and the county court's jurisdictional damages cap of $15,000. However, the court held that the bulk of the awarded fees were attributable to complex appellate matters. It found that much of the

appellate attorneys' time was necessitated by MAB's unsuccessful assertion of the bona fide error defense on remand and the second appeal. The court also found that the hours spent by Flood's appellate attorneys were necessary to allow Flood to pursue her case fully: "[Flood's] position with regard to the bona fide error defense and the ultimate issues determined by this court would not be adequately represented without the vigorous response by her attorneys." The court concluded that if Flood had "capitulated and succumbed then MAB would have won the war of attrition."

◼ ¶ 11 MAB again appealed to the district court ("the third appeal"), this time arguing that the county court erred by awarding statutory damages as well as by awarding Flood's attorneys' fees and costs incurred in the first two appeals.[3] MAB contended that the county court's award of Flood's appellate attorneys' fees from the first and second appeals was void as a matter of public policy because Merenstein's payment of those attorneys' hourly fees violated Rule 1.8. The district court rejected this contention and noted that Merenstein's advancement of the fees ensured that Flood, an indigent client, had access to the appellate courts. The district court also held that the appellate fees awarded by the county court were reasonable. The court cited the duration and volume of the litigation to that point, which included: (1) the first appeal which went all the way to the Colorado Supreme Court; (2) defense against MAB's post-remand assertion of the bona fide error defense at the county court; and (3) the second appeal—MAB's intermediate appeal of the county court's denial of its bona fide error defense. The district court reduced the amount of the fees to $184,297.59 to reflect corrections made by Flood to the total amount requested after she discovered that one month of her appellate attorneys' fees had inadvertently been included twice.

---

3. Although it stated that the county court erred in awarding these costs, MAB failed to advance any arguments regarding the award of costs before the district court and therefore the district court declined to address the award of costs.

Likewise, we do not review the issue of costs because an issue not raised in the trial court is deemed waived and cannot be raised on appeal. *E.g. Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986).

¶ 12 Just over a week after she filed her answer brief in the district court in the third appeal, Flood requested by separate motion the attorneys' fees and costs that she incurred defending against that appeal in the event that she prevailed. MAB moved to strike Flood's motion as untimely, arguing that Flood waived her right to attorney's fees in the third appeal because she requested the fees by motion rather than including this request in her answer brief, as required by Colorado Appellate Rules 28(b) and 39.5. Flood argued that Rules 28(b) and 39.5 were applicable only to appeals to the court of appeals and the supreme court and that these appellate rules did not govern appeals from the county court to the district court. She argued that the rules governing appeals from county court to district court did not contain this same requirement.

¶ 13 The district court agreed with MAB. It held that Rule 411 of the Rules of County Court Civil Procedure was silent on the method to request attorneys' fees. It reasoned that the Colorado Appellate Rules governed because the district court was functioning as an appellate court in this case. Because the Colorado Appellate Rules require an appellee to request attorneys' fees in its answer brief, the district court held that Flood's request for fees and costs, which was filed separately from her brief, was untimely under C.A.R. 28(b) and 39.5. In addition, the district court stated its reluctance to remand the case to the county court for the third time to determine the amount of the fees incurred by Flood in defending against the third appeal: "It is also time, quite frankly, to drive a stake through the heart of this case and lay it permanently to rest." For these reasons, the district court denied Flood's request for attorneys' fees and costs incurred in the third appeal.

¶ 14 MAB and Flood filed cross petitions for certiorari to this court as a result of the district court's ruling. We granted certiorari to determine whether Merenstein's payment of the fees of Flood's appellate counsel violated Rule 1.8(e) of the Colorado Rules of Professional Conduct which would rendering the county court's award of Flood's appellate attorneys' fees invalid, and to determine whether the district court erred by striking Flood's request for attorneys' fees incurred in the third appeal pursuant to C.A.R. 28(b) and 39.5.[4] MAB requests that we reverse the county court's award of attorneys' fees from the first and second appeals. Flood requests that we reverse the district court's ruling that her request for attorneys' fees incurred in the third appeal was untimely.

## II. Analysis

### A. Threshold Issues

■ ¶ 15 We begin by addressing the threshold question of whether a non-client may raise the issue of an alleged violation of opposing counsel's duties to his or her client. As a general principle, trial courts do not deal with claimed violations of professional ethics rules raised by non-clients. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir.1976); *see also Abbott v. Kidder Peabody & Co.*, 42 F.Supp.2d 1046, 1050 (D.Colo.1999) (recognizing that courts generally refuse to disqualify an attorney for a conflict of interest where the attorney's former client has not moved for disqualification). The rationale of this general rule is to prevent the Rules of Professional Conduct from being used as a procedural weapon by opposing parties and thereby subverting the purpose of the rules, which is to protect clients—a concern articulated in the pream-

4. We granted certiorari on the following issues:
1. Whether an arrangement in which trial counsel goes beyond advancing court costs and expenses of litigation by personally paying the attorney fees for appellate counsel violates Rule 1.8(e) of the Colorado Rules of Professional Conduct.
2. In a matter on appeal from county court to district court, whether the district court erred in denying Petitioner's separate motion for attorneys' fees on appeal, and in particular relying upon C.A.R. 28(b) and 39.5 as persuasive

authority for such denial when the appellate rules expressly provide that "Rules 1 through 48, except where specifically noted otherwise, apply to appeals to either the supreme court or to the court of appeals."
3. Whether the district court erred in relying on C.A.R. 28(b) and 39.5 to deny costs to Petitioner, when those rules are expressly applicable only to appeals to either the supreme court or to the court of appeals, and moreover do not apply to requests for costs in any forum.

ble of the Colorado Rules of Professional Conduct. Colo. RPC pmbl. ¶ 20; *see also In re Yarn Processing,* 530 F.2d at 90; *Abbott,* 42 F.Supp.2d at 1050; *Fognani v. Young,* 115 P.3d 1268, 1272 (Colo.2005) ("For example, courts have historically been highly cynical of motions to disqualify opposing counsel, noting that such motions are often dilatory or tactical devices."). In addition, possible ethical violations arising during litigation are better addressed by the "comprehensive disciplinary machinery" of the bar. *Bd. of Educ. of N.Y. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979).

¶ 16 Nonetheless, where the Rules of Professional Conduct become intertwined with litigation and a potential ethical violation threatens to prejudice the fairness of the proceedings, a trial court may consider the issue not as a disciplinary matter but rather within the context of the litigation. *See Fognani,* 115 P.3d at 1269 (holding that the trial court properly exercised its discretion in disqualifying an attorney who was likely to be a necessary witness from serving as an advocate at trial pursuant to Colo. RPC 3.7). Hence, a non-client may raise a potential ethical violation in the context of the litigation in which it arises if the non-client demonstrates that the alleged violation threatens to injure her legally protected rights or that it taints the fairness of the proceedings. *See Fognani,* 115 P.3d at 1269; *In re Appeal of Infotechnology,* 582 A.2d 215, 219 (Del.1990) (holding that the only exception to the general rule that non-clients cannot raise an alleged ethical conflict is when "that party proves a personal detriment or misconduct which taints the fairness of the proceeding"); *see also Colyer v. Smith,* 50 F.Supp.2d 966, 971–72 (C.D.Cal.1999) (holding that, in a case where an ethical breach so infects the litigation in which disqualification is sought that it impacts the non-client party's interest in a just and lawful determination of her claims, that party may have the grounds needed to bring a motion to disqualify based on an ethical violation).

¶ 17 Here, MAB alleges that it should not be required to pay the portion of the attorneys' fees awarded to Flood by the county court attributable to Flood's appellate

counsel because Merenstein's hiring of appellate counsel constituted a violation of the Colorado Rules of Professional Conduct. If Merenstein's payment of appellate counsel violated the ethics rules against providing financial assistance to clients, then the order to pay Flood's appellate counsel's fees would be unfair because the fee award would go to reimburse Merenstein for his unethical financial assistance to his client. Because the fairness of the proceedings would be threatened if the court ordered MAB to pay fees incurred as part of an unethical agreement, we hold that MAB has sufficient grounds to raise the alleged potential ethical violation by Merenstein as it applies to the award of attorneys' fees.

### B. Rule 1.8(e)

¶ 18 Having concluded that MAB has grounds to raise this alleged ethical violation, we turn to the merits of MAB's claim. This court has the exclusive power to regulate the practice of law by virtue of Article III of the Colorado Constitution. Colo. Const. art. III; *Denver Bar Ass'n v. Pub. Utils. Comm'n,* 154 Colo. 273, 391 P.2d 467, 470 (1964). We review de novo questions of law regarding the Rules of Professional Conduct. *See In re Pautler,* 47 P.3d 1175, 1179 (Colo.2002).

¶ 19 Under the Colorado Fair Debt Collection Practices Act, attorneys' fees and costs are awarded to the prevailing party. § 12–14–113(1)(c) & (1.5). Fee-shifting provisions such as this were designed to encourage the bar to enforce these actions, which generally involve only small sums of money. *See Tolentino v. Friedman,* 46 F.3d 645, 652 (7th Cir.1995) ("In order to encourage able counsel to undertake [fair debt collection practices] cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases."); *see also Mau v. E.P.H. Corp.,* 638 P.2d 777, 779 (Colo.1981) (discussing the fee-shifting provision under the security deposit statute). The ability to recover attorneys' fees in fair debt collection practices cases encourages competent counsel to accept cases in order to vindicate consumers' rights. *Lee v. Javitch, Block*

& *Rathbone, LLP,* 568 F.Supp.2d 870, 875 (S.D.Ohio 2008); *see also Student Pub. Interest Research Grp. of N.J., Inc. v. AT & T Bell Labs.,* 842 F.2d 1436, 1449 (3d Cir.1988). This includes appellate attorneys' fees because to deny appellate attorneys' fees to consumers who are forced to prosecute an appeal would undercut the objectives of the Colorado Fair Debt Collection Practices Act. *See Martin v. Allen,* 193 Colo. 395, 566 P.2d 1075, 1076 (1977) (applying this rationale to award appellate attorneys' fees in an action under the security deposit statute). Debt collectors could then, by the simple act of filing an appeal, effectively discourage consumers from obtaining legal redress. *See id.*

¶ 20 The Colorado Rules of Professional Conduct also embrace the goal of providing equal access to justice:

> A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel.

Colo. RPC pmbl. ¶ 6. To encourage attorneys to achieve this objective, the Rules of Professional Conduct permit contingency fee agreements to enable attorneys to provide representation to persons who cannot afford attorneys. *People v. Nutt,* 696 P.2d 242, 248 n. 3 (Colo.1984) ("Contingent fee arrangements serve a necessary purpose in providing a means by which a person of modest financial resources may secure competent legal representation to prosecute his claim in certain kinds of litigation."); *Restatement (Third) of the Law Governing Lawyers* § 35 cmt. b (Am. Law Inst.2000); *see* Colo. RPC 1.5(c) (rule permitting contingency fees). Contingency fee agreements still remain

subject to the requirement under the ethical rules that attorneys' fees be reasonable, as well as the specific requirements and terms contained in the Colorado Rules of Civil Procedure. *See* C.R.C.P. ch. 23.3. For similar reasons, the Rules of Professional Conduct permit an attorney to advance court costs and expenses of litigation for indigent clients because these expenses are "virtually indistinguishable from contingent fees and help ensure access to the courts." Colo. RPC 1.8(e) cmt. 10. Rules such as these promote Colorado's goal of providing access to justice for all persons. *See* Colo. Const. art. II § 6.

¶ 21 With these guiding principles in mind, we turn to the issue of whether Merenstein violated Rule 1.8(e) by his payment of Flood's appellate attorneys' fees. Rule 1.8(e) of the Colorado Rules of Professional Conduct provides that a lawyer "shall not provide financial assistance to a client in connection with pending or contemplated litigation." While this language suggests an absolute rule, the rule provides an exception that "a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client."[5] Colo. RPC 1.8(e)(2). Some courts have cautioned against permitting this exception to swallow the general rule. *See Hernandez v. Guglielmo,* 796 F.Supp.2d 1285, 1290 (D.Nev.2011). However, most cases and treatises analyzing Rule 1.8(e) focus on the exception. *E.g., State ex. rel. Okla. Bar Ass'n v. Smolen,* 17 P.3d 456, 462–63 (Okla.2000) (discussing why financial assistance for living expenses is impermissible under Rule 1.8(e), unlike financial assistance for litigation expenses); *Restatement (Third) of the Law Governing Lawyers* § 35 cmt. c (Am. Law Inst.2000) (characterizing the exception as the rule by stating at the beginning of the comment on financial assistance: "A lawyer may provide financial assistance to a client as stated in Subsection(2) [the exception for court costs and expenses of litigation]"); Charles W. Wolfram, *Modern*

---

**5.** The previous version of Rule 1.8 stated that an attorney could advance the expenses of litigation "provided the client remains ultimately liable for such expenses." Colo. RPC 1.8(e) (2005). However, it provided an exception for indigent clients, stating that "[a] lawyer may forego reimbursement of some or all of the expenses of litigation if it is or becomes apparent that the client is unable to pay such expenses without suffering substantial financial hardship." *Id.* Flood's case spans before and after the change in the rules. Because the rules are essentially the same in substance, we analyze and refer to the current Rule 1.8.

*Legal Ethics* § 9.2.3 (1986) (beginning the discussion of the rule regarding financial assistance of clients by noting the distinction between the permitted assistance for expenses of litigation and the impermissible assistance for clients' living expenses).

¶ 22 Hence, by examining legal scholars' and other jurists' analysis of the rule, and considering its purpose and our requirement that we interpret rules as a whole,[6] we conclude that Rule 1.8(e) is ultimately defined by its exception distinguishing between permissible and impermissible types of financial assistance to clients, rather than its preliminary unequivocal prohibition against providing financial assistance to clients. Therefore, to determine whether Merenstein violated Rule 1.8(e), we must parse the language of the exception to determine how it distinguishes between permissible and impermissible expenses.

¶ 23 In construing the language of the exception, we look first to the plain meaning of "expenses of litigation." An expense is "[a]n expenditure of money, time, labor, or resources to accomplish a result." *Black's Law Dictionary* 658 (9th ed. 2009). Litigation is "[t]he process of carrying on a lawsuit." *Id.* at 1017. An expense of litigation is therefore an expenditure of money, time, labor, or resources to accomplish the process of carrying on a lawsuit. Comment 10 to Rule 1.8 provides as examples of litigation expenses "the expenses of medical examination and the costs of obtaining and presenting evidence." Colo. RPC 1.8 cmt. 10. These examples stand in stark contrast to those expenses that are prohibited, which include "making or guaranteeing loans ... for living expenses." *Id.; see also Smolen,* 17 P.3d at 463 (explaining difference between litigation expenses and other expenses prohibited by Rule 1.8(e)); Wolfram, *supra,* § 9.2.3 (noting that the attorney ethics rules prohibit a lawyer from supporting a client's living costs but permit a lawyer to support a client by loaning court costs and other expenses of litigation).

¶ 24 This exception allows lawyers to provide financial assistance to clients by advancing expenses of litigation because these advances are "virtually indistinguishable" from contingent fees. Colo. RPC 1.8 cmt. 10. Contingent fees and advancement of litigation expenses are permitted as exceptions to the rule prohibiting financial assistance to clients because, despite their potential to create conflicts of interest, they ensure access to the courts. *Rubio v. BNSF Ry. Co.,* 548 F.Supp.2d 1220, 1224 (D.N.M.2008); *see also Nutt,* 696 P.2d at 248 n. 3; *Restatement (Third) of the Law Governing Lawyers* § 36 cmt. c (Am. Law Inst.2000) ("Allowing lawyers to advance [litigation] expenses is indistinguishable in substance from allowing contingent fees and has similar justifications, notably enabling poor clients to assert their rights.") (internal citation omitted).

¶ 25 Hence, by parsing the language of the rule and its comment and considering the purpose of the exception, we conclude that the division between permissible and impermissible advances under 1.8(e) is based upon the purpose of the expenditure. If the expense is related to conducting the litigation, then it is allowed under the exception for court costs and expenses of litigation. If it is not related to conducting the litigation, such as loans to clients for living expenses and the like, then it is not permissible. *See* Colo. RPC 1.8(e) cmt. 10; ABA Formal Ethics. Op. 04–432 (Jan. 14, 2004) (stating the Committee's belief in analyzing Model Rule 1.8(e) that advancing a client's bond may be considered a court cost or expense of litigation when it constitutes a practical or tactical objective in a lawyer's handling of a defendant's case). Turning to the case at hand, we determine that the expense of appellate counsel is related to conducting the litigation and not to other non-litigation expenses of a client such as living expenses. Hence, we hold that the payment of Flood's appellate counsel's fees by Merenstein was within the ambit of the exception for litigation expenses found in

---

**6.** *See People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986) ("[A] statute must be read and considered as a whole.").

Rule 1.8(e).[7] *See* Alaska Ethics Op.2004–02, 2004 WL 1853007, at *1 (April 27, 2004) (reasoning that an attorney was permitted to pay the attorneys' fees awarded to an opposing party against his client because the Committee could see no practical or rational basis for excluding an attorney fee award from the definition of "expenses of litigation").

¶ 26 Merenstein's payment of the fees of appellate counsel comports with the goal of access to justice enshrined in the Colorado Rules of Professional Conduct. *See* Colo. RPC 1.8(e) cmt. 10. If Merenstein had not associated appellate counsel to handle Flood's appeal, then Flood would likely have had no recourse to appeal the rulings against her. Of course, debt collectors, who regularly participate in this type of litigation and thus have the resources to do so, have no such limitation. It would not serve Colorado's goal of access to justice for consumers to be generally unable to appeal adverse rulings. This would effectively ensure that debt collectors would prevail by the simple act of pursuing an appeal. *See Martin*, 566 P.2d at 1076 (noting that not awarding attorneys' fees to tenants prevailing on appeal would allow landlords to discourage consumers from obtaining legal redress of valid security deposit claims simply by filing an appeal).

■■■ ¶ 27 Preventing a lawyer from advancing the costs of another attorney who is associated to provide expertise in a specific area of the law would also create unnecessary tension with Colorado Rule of Professional Conduct 1.1, which mandates that a lawyer provide competent representation. Comments 1 and 2 to Rule 1.1 state that to provide competent representation to a client in a field in which an attorney does not have the requisite legal knowledge and skill, that attorney may associate with another attorney of established competence in that field. Colo. RPC 1.1 cmts. 1 & 2. Merenstein decided that he did not have sufficient knowledge and skill to serve as competent appellate counsel for Flood, and therefore he took a course of action in furtherance of the mandate of Rule 1.1 by associating attorneys with the requisite knowledge and skill to do so. MAB's suggested reading of Rule 1.8(e) would prohibit attorneys from following what Merenstein did to represent Flood competently, thereby conflicting with Rule 1.1's mandate to serve their clients ethically.[8]

7. MAB urges us to follow the Supreme Court of Florida's holding in *The Fla. Bar v. Patrick*, 67 So.3d 1009 (Fla.2011). However, for the reasons discussed above, we disagree with that court's conclusion that the payment of appellate attorneys' fees is not a litigation expense. In addition, the facts of the *Patrick* case are markedly different than those in this case. Patrick persuaded his client to reject a settlement offer that would have fully satisfied the client's $48 claim in order to further Patrick's own interest in receiving greater compensation in attorneys' fees. *Id.* at 1013. Central to the court's decision in *Patrick* was that there was no possible reason for continuing the case except for the benefit of the attorney. *Id.* at 1016. The referee in *Patrick* found that the client had "little or nothing to gain" by proceeding with the case. *Id.* Here, Flood had recovered nothing at the county court and received no settlement offer from MAB. Therefore, she had everything to gain by an appeal. Hence, we find the situation in *Patrick* much different than Flood's case and decline to follow *Patrick*'s reasoning.

8. MAB also argues that the disproportionality of the awarded fees to Flood's statutory damages renders the fee award invalid. We did not grant certiorari to review the reasonableness of the attorneys' fees and statutory damages awarded by the court to Flood. Therefore, it is not properly before us for consideration. However, we note that this argument has been rejected by numerous courts considering fair debt collection practices, other consumer protection, and civil rights cases. *See Phenow v. Johnson, Rodenberg, & Lauinger, PLLP*, 766 F.Supp.2d 955, 959 (D.Minn.2011) (collecting federal cases rejecting a proportionality requirement). In consumer protection cases attorneys' fees will almost always be disproportionate to the damage award. *See Loggins v. Delo*, 999 F.2d 364, 369 (8th Cir.1993) (noting that the plurality in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), found that a rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts). The "value" of victory in a fee-shifting case is not always gauged solely in monetary terms. *E.g. Blanchard*, 489 U.S. at 96, 109 S.Ct. 939 ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."); *Rivera*, 477 U.S. at 575, 106 S.Ct. 2686 (stating that damage awards do not fully reflect the public benefit advanced by civil rights litigation); *Tolentino*, 46 F.3d at 652 (applying *Rivera*'s rationale in a fair debt collection practices case). We also note that the county court found that the vast majority of the hours

¶ 28 For these reasons, we hold that Merenstein did not violate Rule 1.8(e) by paying the fees of the appellate attorneys he associated on this prolonged case. We therefore affirm the part of the district court's order holding that Rule 1.8(e) was not violated and affirming the county court's award of attorneys' fees to Flood.

## C. District Court's Denial of Attorneys' Fees Incurred on Appeal

¶ 29 Turning to the second issue in this appeal, we consider whether the district court erred by applying the Colorado Appellate Rules to deny Flood's request, in an appeal from the county court to the district court, for the attorneys' fees and costs she incurred in that appeal. In the third appeal at the district court, Flood filed a motion separate from her answer brief requesting her attorneys' fees and costs incurred in defending against the third appeal in the event that she was the prevailing party. Although she prevailed, the district court denied Flood's request for fees and costs based on Colorado Appellate Rules 28(b) and 39.5, which require an appellee to make her request for attorneys' fees in her answer brief rather than by separate motion.

■■■■ ¶ 30 This court retains authority to promulgate and interpret court procedural rules. *See* Colo. Const. art. VI § 21; *see Borer v. Lewis*, 91 P.3d 375, 380 (Colo.2004). Interpreting these procedural rules and statutes raises a question of law, which we review de novo. *See Dubois v. People*, 211 P.3d 41, 43 (Colo.2009). To construe procedural rules, we employ the same interpretive rules applicable to statutory construction. *See People v. Fuqua*, 764 P.2d 56, 58 (Colo. 1988). We first look to the language of the rule itself, and if the rule is plain and unambiguous, then we apply the rule as written. *Id.* at 59.

¶ 31 The Colorado Appellate Rules state that they "apply to appeals to either the supreme court or the court of appeals." C.A.R. ch. 32, Applicability of Rules ¶ 2; *see People v. Zhuk*, 239 P.3d 437, 439 (Colo.2010) (holding that C.A.R. 4.1 was inapplicable on

its face to an appeal from a county court to a district court). On the other hand, the procedural rules applied in appeals from the county court to the district court are set forth in sections 13–6–310 and 13–6–311, C.R.S. (2011), as well as in Rule 411 of the Colorado Rules of County Court Civil Procedure. MAB argues that the silence of the relevant provisions of these rules on how requests for attorneys' fees and costs should occur indicates that the Colorado Appellate Rules should apply. However, other subsections of these very same rules state explicitly when the Colorado Appellate Rules do apply. For example, section 13–6–311(5) provides that after final disposition of the appeal by the district court the case is returned to the county court, unless review by the supreme court occurs upon writ of certiorari *pursuant to the rules of the supreme court.* Section 13–6–310(4) states that an appeal to the supreme court from the district court is *"pursuant to such rules as [the supreme court] may promulgate."* (Emphasis added.) Similarly, the rule of criminal procedure that governs interlocutory appeals from the county court to the district court in criminal cases explicitly directs the court to look to the Colorado Appellate Rules for guidance if no procedure is specifically prescribed in 37.1. Crim. P. 37.1(g); *see also Zhuk,* 239 P.3d at 440 (applying C.A.R. 26(a) because Crim. P. 37.1(g) directs courts to look to the appellate rules when a procedure is not specifically provided for in Crim. P. 37.1). Hence, if the Colorado Appellate Rules were intended to apply in this situation, then the pertinent provisions of the county court rules would expressly refer to the appellate rules, just as sections 13–6–311(5), 13–6–310(4), and Crim. P. 37.1, do.

■■■ ¶ 32 Because the relevant provisions of the rules governing appeals from the county court to the district court do not state that the Colorado Appellate Rules apply in this situation, we conclude that the Colorado Appellate Rules do not apply and that Flood was not required to request attorneys' fees and costs when she filed her answer brief

---

expended by Flood's appellate attorneys were reasonable and necessary for Flood to prevail in

the case and were in fact necessitated by MAB's assertion of the bona fide error defense.

with the district court. Thus, the district court erred by denying Flood's request for appellate attorneys' fees and costs in the third appeal because she did not follow the procedures set forth in C.A.R. 28(b) and 39.5. We therefore reverse this portion of the district court's ruling.

### III. Conclusion

¶ 33 In statutory fee cases such as this one, the attorneys' time spent establishing the entitlement to and amount of the fee is compensable, because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 981 (9th Cir.2008). This includes appellate attorneys' fees. *See Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.,* 616 F.3d 1098, 1107 (10th Cir.2010) (awarding appellate attorneys' fees in a federal fair debt collection practices claim); *Mau,* 638 P.2d at 781 (Colo.1981) (awarding appellate fees under the security deposit statute); *Martin v. Allen,* 193 Colo. 395, 566 P.2d 1075, 1076 (1977) (same); *Mishkin v. Young,* 198 P.3d 1269, 1274 (Colo.App.2008) (same). Therefore, we remand this case to the district court to return it to the county court for proceedings to determine whether Flood is entitled to appellate fees as the prevailing party in this appeal and, if so, the amount of Flood's reasonable attorneys' fees and costs incurred in connection with this third appeal—including the proceedings before this court.

¶ 34 Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

¶ 35 I respectfully dissent from the judgment of the court for two separate but related reasons. Initially I do not share the majority's willingness to treat the several hundreds of thousands of dollars paid by Merenstein to his appellate attorneys, payments that did not even arguably fall within any sanctioned fee splitting or contingent fee arrangement, as allowable "expenses of litigation." In addition (and perhaps more importantly), however, I believe the majority simply fails to address, or perhaps even appreciate, what to my mind is the central question posed by the statutory fee award in this case: Whether, in the absence of any agreement between the appellate attorneys and the plaintiff in the case, their fees, for which the plaintiff's attorney seeks reimbursement, constitute "reasonable attorney fees" within the contemplation of section 12–14–113, C.R.S. (2011).

¶ 36 While I readily agree that Mercantile is not barred from invoking ethical considerations as a basis for seeking reduction of the fees awarded against it, I would not consider it an appropriate exercise of our authority over the legal profession to deny a statutorily-authorized fee award to a successful consumer on the basis of unethical conduct by her attorney. To the extent the majority views Mercantile's defense primarily as a plea for fairness rather than an argument against treating the fees of other attorneys for which Merenstein is personally liable as the "reasonable attorney fees" of the successful consumer, and in fact construes Colo. RPC 1.8(e) to bless the fee arrangement in this case, I not only disagree but find it both unfortunate and ironic that a dispute over this statutory fee-shifting provision should become the vehicle for dissolving a firm and long-accepted distinction between attorney fees and other costs and expenses of litigation.

¶ 37 Traditionally, much of the world has regarded as highly unethical attorney fee arrangements that depend upon and are measured as a percentage of a successful recovery. *See generally* Samuel Issacharoff & Geoffrey P. Miller, *Will Aggregate Litigation Come to Europe?*, 62 Vand. L. Rev. 179, 198 (2009). In this country, by contrast, we have long accepted such contingency fee arrangements, at least in certain classes of cases and under limited circumstances, as well as specific fee-shifting provisions, as techniques for providing greater access to the courts and encouraging the private enforcement of various rights and regulations. In doing so, however, we have never been oblivious to the ethical dangers inherent in providing financial assistance to clients and have, in fact, attempted to minimize those

dangers through a host of ethical constraints, ranging from express limitations on the kinds of assistance and fee arrangements considered acceptable, to requiring written contracts, advisements, and warnings to ensure the informed consent of clients.

¶ 38 In addition to finding it acceptable for attorney fees to remain contingent on the outcome of a matter, our Rules of Professional Conduct have also given lawyers the leeway to advance court costs and expenses of litigation, with repayment similarly contingent on the outcome. Colo. RPC 1.5 & 1.8(e). In what strikes me as a kind of bootstrapping or circular logic, the majority reasons today that allowing the advancement of expenses of litigation is largely indistinguishable from, and serves the same purpose as, allowing contingent fees, and therefore the "expenses" contemplated by this exception to the prohibition against providing financial assistance to clients must be understood to comprehend any "expense" incurred in conducting the litigation, including even the expense of personally hiring other attorneys to conduct it. With this reasoning we appear to have come full circle, moving from a limited exception for legal services recompensed only upon a favorable outcome, to a rule permitting attorneys to personally invest in their clients' lawsuits, without regard for amount, risk, or motivation, to the extent of retaining other attorneys to conduct the litigation in their stead.

¶ 39 This court can, of course, not only *construe* its own rules governing the profession but in fact *rewrite* them as it sees fit. The virtually identical provisions of the Model Rules of Professional Conduct, promulgated by the American Bar Association and adopted by this and many other jurisdictions, have, however, been persuasively interpreted elsewhere to precisely the opposite effect. *See Fla. Bar v. Patrick,* 67 So.3d 1009 (Fla. 2011) (finding fees for separately hired appellate attorneys to fall outside the meaning of "expenses of litigation"). Should it be necessary, the principles of construction militating against the majority's interpretation are ably marshaled there, *id.,* but my fundamental disagreement with the majority is one of policy, centered on emphasis and balance.

Financial assistance of virtually every imaginable kind can have the effect of increasing access for those otherwise unable to afford it. However, as their accompanying comments make perfectly clear, the ethical rules have developed to nevertheless limit the ability of lawyers to subsidize law suits or administrative proceedings brought on behalf of their clients, on the basis of two countervailing considerations. Subsidizing lawsuits is barred to the extent that doing so would encourage clients to pursue law suits that might not otherwise be brought and to the extent that providing such assistance would give lawyers too great a financial stake in the litigation. Colo. RPC 1.8 cmt. Surely an example of these two dangers could not be more readily found than in a case such as this, in which an attorney mortgages his home and risks several hundred thousand dollars, admittedly for his own satisfaction and benefit, to perpetuate for years an action with a best possible outcome for his client of one thousand dollars.

¶ 40 While it may be within the authority of this court to formulate the ethical rules governing the legal profession in the jurisdiction, the ultimate question here is one of legislative authorization for the specific fee award in this case. Among other things, section 12–14–113(1)(c) makes a debt collector liable for the "reasonable attorney fees" of a consumer who successfully prosecutes an action to enforce the collector's statutory obligations. Whether the fees of appellate attorneys personally engaged and paid for by the consumer's contingency-fee attorney qualify as the "reasonable attorney fees" of the consumer herself is therefore largely a matter of statutory interpretation.

¶ 41 There can be little doubt that the statute renders the debt collector liable to the consumer *only* for her own attorney fees. As we have indicated elsewhere, although the Rules of Professional Conduct prescribe the obligations of an attorney to his client, including the limits and formalities of fee agreements, they expressly contemplate that external principles of substantive law must determine whether an attorney-client relationship exists in the first place. *People v. Gabriesheski,* 262 P.3d 653, 658 (Colo.2011).

In this regard, we have held generally that *a client is a person who employs or retains an attorney* for advice or assistance on a matter related to legal business, and an attorney-client relationship is established when it is shown that *the client seeks and receives the advice of the lawyer* on the legal consequences of the client's past or contemplated actions. *Id.* at 659 (citing *People v. Bennett,* 810 P.2d 661, 664 (Colo.1991) & *People v. Morley,* 725 P.2d 510, 517 (Colo.1986)).

¶ 42 Although the majority now holds that an attorney may make himself personally liable for paying a different attorney on behalf of his client, in this case Merenstein not only paid the fees of the appellate attorneys, he retained them as well. In fact, when considered in light of the ethical obligations of attorneys to their clients, the circumstances of this case point more to an attorney-client relationship between the appellate attorneys and Merenstein himself, than Merenstein's client. While the Colorado Rules of Professional Conduct admit of the possibility of representation in which the attorney is compensated by a third party, such as a relative or friend, an indemnitor, or a co-client, this kind of representation is permissible only if the attorney, among other things, at least obtains the informed consent of the client. Colo. RPC 1.8 cmt. 11 & 12. The record indicates that the appellate attorneys in this case had no agreement with the consumer, contingent or otherwise, and instead that their fee agreement, which required payment on an hourly basis, was solely with Mr. Merenstein.

¶ 43 Similarly, while the majority indicates that Merenstein's contingency fee agreement with his client authorized him to hire other attorneys and that he did so with the knowledge of his client and the understanding that he would be reimbursed from any ultimate fee award, that agreement was purposefully never produced, either to Mercantile or in court. Merenstein did testify, however, that he had no other agreement with his client, and instead that he merely informed his client of his agreement with appellate counsel. I can find nothing in the record to indicate that the client was ever informed about the specifics of the fee arrangements between Merenstein and the appellate attorneys, other than that she would not be liable for their fees, which, like Merenstein's contingent fee, would be satisfied from the ultimate fee award. In any event, I find absolutely nothing in the record to suggest the client's written informed consent, *see* Colo. RPC 1.8 cmt. 12 & Colo. RPC 1.7(b), to Merenstein's payment of the appellate attorneys' fees.

¶ 44 Given the clear purpose of this statutory fee-shifting provision to benefit consumers rather than attorneys, I believe it must be construed to require greater justification for an award than merely appearing on the consumer's side of the action. At least where the attorneys whose efforts are at issue concede that they had no agreement whatsoever with the consumer and were both retained and compensated by the consumer's attorney, from his own pocket, I would require some showing that an attorney-client relationship existed with, and their loyalties flowed to, the consumer rather than her attorney.

¶ 45 Because I would find that the fees earned by the appellate attorneys were not shown to be the reasonable attorney fees of the consumer at all, and in addition that the statute should not be construed to invite a fee arrangement I consider prohibited by the ethical standards of the jurisdiction, I respectfully dissent.

¶ 46 I am authorized to state that JUSTICE EID joins in this dissent.