PER CURIAM.
We have for review a referee’s report regarding alleged ethical breaches by Timothy Allen Patrick. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons discussed herein, we approve the referee’s findings of fact, recommendations of guilt, recommended sanctions, and award of costs to The Florida Bar.
FACTS
In November 2009, The Florida Bar filed a complaint against Respondent alleging that he violated Rules Regulating the Florida Bar 3-4.3 (general misconduct); 4-1.8(e) (advancing costs of litigation to client); and 4-S.4(c) (conduct involving dishonesty, deceit, fraud, or misrepresentation). A referee was appointed who held hearings, considered evidence, and submitted a report to the Court in which he made the following findings and recommendations.
Respondent represented Dr. Newman, a chiropractor, on two PIP claims against Progressive Insurance Company (“Progressive”) regarding the treatment of Mr. *1011 Riley (“Riley”) and Mrs. Reem Riley (“Reem Riley”). Respondent represented Newman pursuant to a legal services contingency fee contract. The contract provided that if Newman prevailed, the insurance company would be required to pay Newman’s attorney’s fees to Respondent. If Newman did not prevail, Newman would not owe Respondent any attorney’s fees. Thus, Newman would not be responsible for payment of attorney’s fees to Respondent. On the other hand, if the insurance company prevailed, the contract provided that Newman alone could be responsible for Progressive’s attorney’s fees and costs.
The referee found that the “claim involved a $24.00 claim for each of the two Rileys, i.e. a total of $48.00.” The entire benefit Newman could gain from the case was payment of $48 and a clear statement to Progressive that he would pursue claims and that the claims were valid. By the time the case reached mediation, Respondent had spent approximately sixty hours working on it. His normal billing rate was $225 per hour.
If an insured is ultimately found liable for contesting a PIP claim, the statutory penalties of interest and attorney’s fees would be applicable. If the claim was determined to be unfounded, Newman could have been responsible for Progressive’s attorney’s fees.
At mediation, Progressive offered $2500 to settle the claim. By this offer, Newman would have been paid in full ($48) and would have established the desired precedent that Progressive must pay these claims. The referee found that “Newman could not have gained or benefited any more than the offer made at mediation.” However, if Newman accepted the offer, Respondent would have been compensated less than $2,500 for his sixty hours of work. Newman rejected the settlement offer. The reason for the rejection is the primary factual dispute in this case.
Newman testified that he was inclined to accept the offer, as it would have given him everything he could have received in the case and eliminated any risk that he would be liable for Progressive’s fees and costs. According to Newman, Respondent raised the issue that he had spent sixty hours on the case and that this would be a low amount of compensation for him. Newman stated that Respondent wanted to proceed with the case, and indicated there was a high likelihood that the claim would be upheld and then Respondent could be appropriately compensated. According to Newman, Respondent told him that Respondent would be responsible for all of Progressive’s fees and costs if Progressive prevailed. Newman testified that he rejected the mediation offer based upon Respondent’s representations.
Respondent admitted that he did raise the issue of the time he had invested in the case, but he denied advising Newman to reject the claim and denied offering to be responsible for Progressive’s possible attorney’s fees or costs. The referee found that Respondent’s testimony regarding the decision to reject the mediation offer was vague and incomplete, and that there were direct conflicts between Respondent’s and Newman’s testimonies.
Because the offer was rejected at mediation, the two PIP claims proceeded to trial and appeal. The Reem Riley case proceeded to a non-jury trial. Newman’s claim was upheld at the trial and he was awarded $24 in damages. Also, he was entitled to attorney’s fees and costs. Respondent had expended 235.5 hours for the Reem Riley $24 PIP claim. The court awarded attorney’s fees of $120,772.50, as well as costs, on the $24 PIP claim.
As to the Riley claim, Progressive was awarded a Final Summary Judgment and *1012 attorney’s fees. The court awarded $9,000 in fees to Progressive, plus $1,200 in costs. The court authorized a setoff for these claims that would have netted Respondent approximately $110,000. Progressive appealed the award and Newman filed a cross-appeal.
Respondent “retained” another attorney, Mr. Saltsgaver, to represent Newman in the appeal. Pursuant to the contingent fee agreement, Newman was not responsible for payment of any fees to Saltsgaver.
Progressive prevailed on both appeals. The award of attorney’s fees to Respondent was set aside. Newman was legally responsible for Progressive’s fees and costs.
Respondent then retained the services of another attorney, Mr. Caldevilla, to pursue additional appellate remedies. Respondent signed a fee engagement letter with Caldevilla, but Newman never signed the engagement letter. Caldevilla sent periodic statements to Respondent and Newman, with Respondent paying Caldevilla approximately $5800 in fees. When Calde-villa contacted Newman regarding fees owed, Newman indicated that he had never signed the fee engagement letter and was not responsible for any of Caldevilla’s fees. At that point, Caldevilla’s office staff examined the office’s records and confirmed that the fees had been paid by Respondent, not Newman. Caldevilla contacted Respondent regarding these payments, and Respondent feigned surprise that his office had been paying Caldevilla’s fees. The referee found this representation by Respondent to Caldevilla was “in direct contravention of the clearly established evidence in this case that Patrick accepted responsibility for payment of at least part of Caldevilla’s fees and authorized payment thereof. The representations by Patrick to Caldevilla regarding surprise that he had been paying part of the fees was false and misleading.”
Progressive prevailed on both of these appeals. Progressive sought payment from Newman of the fees that were awarded to Progressive.
The referee had to determine “whether Newman rejected the offer to settle and accepted responsibility of the potential liability for Progressive’s attorney’s fees or whether Patrick induced Newman to reject the offer so that Patrick could pursue full payment of attorney’s fees and costs herein and Patrick assume responsibility for Progressive’s attorney’s fees in the perceived unlikely event that Progressive ultimately prevailed in the case.” The referee found that Newman rejected the offer of settlement based upon Respondent’s inducements so Respondent could pursue the full claim for attorney’s fees. The referee also found that Respondent told Newman that if Progressive prevailed, Respondent would be responsible for Newman’s fees and costs to Progressive. The referee specifically rejected Respondent’s assertions that he did not induce and encourage Newman to reject the offer of settlement and did not indicate to Newman that Respondent would be responsible for Progressive’s fees and costs if Progressive prevailed.
Further, the referee found that Newman’s actions after the rejection of the settlement offer were consistent with Newman’s reliance on Respondent’s assurance that he would have no ultimate risk because Respondent had assumed all risk of continuing the prosecution of these small PIP claims. Newman had nothing further to gain. Absent Respondent’s assurances, Newman faced significant risk in having the cases proceed after mediation. Also, Newman’s decision not to sign Caldevilla’s fee engagement letter and refusal to pay any fees are consistent with this position.
*1013 In comparison, the referee found that Respondent’s explanations of the rejection of the offer “defy reason, logic, and an attorney’s duty to zealously represent a client.” Respondent’s claim that he merely let Newman decide without providing a recommendation falls below any reasonable level of competency. Respondent should have advised Newman to accept the offer because the offer gave Newman everything Newman could have gained in the case. The referee stated:
The entire motivation to reject the offer at mediation and proceed with this claim was based upon Patrick’s desire to be fully compensated for the time, money, and effort he had placed in this case. In order to be able to do so, he induced and convinced Newman to reject the offer by accepting all of the additional risk. Patrick clearly placed his personal interest of being compensated above the interest of his client. Patrick wrongfully advised and induced his client to reject an offer for full compensation so that Patrick could personally benefit. Patrick wrongfully agreed to and paid approximately $5,800.00 towards Caldevilla’s fees.
Respondent denied making this inducement to Newman and refused to pay any of Progressive’s fees or costs that were levied upon Newman.
The referee found that Respondent’s conduct, which includes placing his personal interest above the interests of his client, inducing his client to reject an offer that could subject his client to significant liability and his refusal to abide by his representations to Newman significantly damaged his client.
Respondent’s representations to Newman made Respondent the primary beneficiary of any successful litigation, while imposing substantial risk on Newman, his client, in the event of failure. Respondent engaged in two instances of inducing Newman to continue the litigation, even though further litigation could not provide any additional benefit to Newman. Respondent induced Newman to continue the litigation so Respondent could pursue more promising compensation.
Recomviendations as to Guilt. The referee recommended that Respondent’s unethical promise to indemnify Newman violated rules 3^4.3 (general misconduct) and 4-1.8(e) (improper financial assistance to client).
Also, Respondent improperly continued the litigation by agreeing to pay and then actually paying a portion of Caldevilla’s attorney’s fee. Based on this misconduct, which is uncontroverted, the referee recommended finding that Respondent is guilty of violating rules 3-4.3(general misconduct) and 4-1,8(e) (improper financial assistance to client).
Respondent was also charged with violating rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee did not recommend finding a violation of this rule.
Disciplinary History. Respondent was the subject of two previous disciplinary matters. One of those cases, Florida Bar v. Patrick, 954 So.2d 28 (Fla. Mar. 8, 2007) (No. SC06-178), is relevant to the present case because it shows Respondent has a history of placing his own financial interests above those of his clients. In that case, the Court issued an order imposing a public reprimand and directing Respondent to pay $13,000 in restitution.[1]
*1014 In one count, Respondent had failed to inform his client, Mrs. Whitney, that the insurance company had received a summary judgment against her. Respondent pursued an appeal without telling the client. He lost the appeal, and the insurance company obtained a judgment against the client for approximately $15,300 in attorney’s fees and costs.
In another count, Respondent received an offer from Progressive on behalf of his client, Dr. Tran. Respondent did not communicate the offer to Tran, but told Progressive that Tran would accept the offer if Progressive paid Respondent’s attorney fees of $1300 and costs. Progressive and Respondent did not reach an agreement regarding the amount of attorney’s fees, and the case proceeded to litigation. Thereafter, Respondent twice made offers to Progressive, without consulting with Tran, which Progressive rejected. Eventually, Tran had to pay Progressive’s attorney’s fees and costs of $13,000.
Aggravating and Mitigating Factors. The referee found two aggravating factors: prior disciplinary offenses (specifically noting that Respondent’s misconduct in the current case is remarkably similar to the facts in No. SC06-178); and dishonest or selfish motive (Respondent placed his desire to collect attorney’s fees and costs above the interests of his client, Newman, to the detriment of the client). The referee found one mitigating factor, good character or reputation.
Recommended Sanctions and Award of Costs. After considering the Florida Standards for Imposing Lawyer Sanctions and case law, the referee recommended that Respondent be suspended for one year and that Respondent must successfully complete an ethics course and pass the ethics portion of the bar examination. The referee awarded costs to The Florida Bar in the amount of $3,873.15.
On Review. Respondent petitioned for review, challenging the referee’s report on three issues.
ANALYSIS
First, Respondent challenges the referee’s finding of fact that Respondent orally promised to indemnify Newman for the opposing party’s attorney’s fees and costs. The Court’s standard of review for evaluating a referee’s factual findings is as follows: This Court’s review of such matters is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); see also Fla. Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). Further, a party cannot meet this burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee’s findings. Fla. Bar v. Committe, 916 So.2d 741, 746 (Fla.2005); Fla. Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997).
Respondent has not met his burden. He asserts that the referee’s findings are not supported, but does so by pointing to his own testimony. Thus, he is pointing to the contradictory evidence that the referee thoroughly considered. Further, the referee specifically acknowledged in his report that there was conflicting evidence. Thereafter, the referee explicitly found that Newman was a credible witness and Respondent was not. “Because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee’s assessment and his resolution of the conflicting testimony.” Fla. Bar v. Elster, 770 So.2d 1184, 1185 (Fla.2000); see also Fla. Bar v. Carricarte, 733 So.2d 975, 978 (Fla.1999) (the referee is in a unique *1015 position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect).
In making this credibility determination, the referee noted that Newman’s testimony was consistent with the events that occurred. Newman called Respondent and had a heated discussion with him regarding Respondent’s promise to pay Progressive’s fees and costs. Also, Newman did not make any payments towards Cal-devilla’s fees, even though Caldevilla was sending him monthly bills. Further, Respondent’s office was paying the bills from Caldevilla. Thus, the actual events that took place corroborate Newman’s testimony.
Accordingly, based on competent substantial evidence in the record and the referee’s credibility finding, we conclude that the referee’s finding that Respondent orally promised to indemnify Newman for Progressive’s attorney’s fees and costs is supported.
Second, Respondent asserts that the referee’s factual findings are insufficient to support the recommendations as to guilt. The Court has repeatedly stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So.2d 554, 557-58 (Fla.2005). Thus, Respondent is challenging the referee’s findings of fact and legal conclusions. Initially, the Court examines the record to determine whether the facts are supported, as the findings of fact are the first step in determining whether a respondent has violated the disciplinary rules. Next, the Court determines whether those facts support the legal conclusion regarding the recommendations as to guilt.
Respondent asserts that the Court should disapprove the referee’s recommendation that he violated rule 4-1.8(e) (advancing costs of litigation to client). The critical facts are admitted regarding this issue — Respondent agreed to pay at least a portion of Caldevilla’s fees. Further, Respondent’s firm sent checks to pay those fees. Thus, the referee’s findings of fact are supported by competent substantial evidence (testimony and the firm’s checks), as Respondent paid for the Calde-villa appeals.
The determinative issue is whether the payments violated rule 4-1.8(e). In Florida Bar v. Jasperson, 625 So.2d 459 (Fla.1993), the respondent was found guilty of violating rule 4-1.8(e). In Jasperson, the clients retained the respondent to file a bankruptcy petition to prevent the sale of their residence through a scheduled foreclosure sale. Through an error of the respondent’s office, which respondent admitted, the bankruptcy petition was not filed until approximately one hour after the foreclosure sale of the home. Although other parties were interested in the property, the respondent offered to purchase the home. The clients sold the home to the respondent “in exchange for his paying off the foreclosure judgment, paying off the clients’ unsecured indebtedness, and giving the clients $5,000 cash.” Id. at 461. The respondent did not inform the bankruptcy court of this event. In fact, the respondent proceeded with the bankruptcy case, including filing a second bankruptcy petition. When the bankruptcy court learned of the sale and the respondent’s failure to inform that court of these events, the bankruptcy court fined the respondent $20,000 and referred the matter to The Florida Bar. In an order, the bankruptcy court stated:
Once the contract for sale was entered and ultimately consummated, the only *1016 possible reason for continuing with the bankruptcy case was protection of Jas-person’s interests in the property. It is clear at that point Debtors could gain no further advantage by continuation of the case since all the benefits normally obtained by a Chapter 13 case had been realized through the contract for sale of the property. Furthermore, had the Court chosen to convert this case to one under Chapter 7, the potential negative ramifications on Debtors of continuing the bankruptcy case could have. been considerable. Thus, it is clear Jasper-son’s interests not only interfered with his representation of Debtors, they completely dominated all actions taken in the bankruptcy case.
[[Image here]]
Jasperson has argued repeatedly that during its entire pendency, the bankruptcy case served both himself and Debtors. He has stated the bankruptcy case was continued in order to protect Debtors’ equity in their home by permitting Debtors an opportunity to redeem their property. He has also contended if the redemption of the property could not be accomplished either through the bankruptcy ease or the state court proceedings, the money paid under the contract for sale would be returned and Debtors would proceed towards proposal of a plan. These assertions are not supported by the contract for sale, the statements in Debtors’ Affidavit or common sense....
It follows from this reasoning and from a review of the various pleadings filed in this case and in the adversary proceeding that each document filed after the execution of the contract for sale was filed for the improper purpose of avoiding malpractice liability on the part of Jasperson and protecting Jasperson’s interests in the property.
Id. at 461-62. Additionally, the bankruptcy court chastised Jasperson for filing documents containing misleading statements and called the ongoing bankruptcy proceeding a “mere fiction sustained solely for Jasperson’s benefit.” Id. at 462.
While Respondent asserts that rule 4-1.8(e) permitted him to fund the appeal of his client’s case by another attorney, Jasperson undermines his position. Respondent asserts that he continued the appellate cases in order to benefit his client. However, like Jasperson, Respondent proceeded with the cases to benefit himself. In both the present case and Jasperson, the clients had little or nothing to gain by proceeding with the cases. In fact, Newman was exposed to more liabilities by proceeding with the cases. Further, both respondents proceeded with the cases, at least in part, to rectify significant mistakes that they had made. Jasperson had missed the deadline, then engaged in a conflict of interest by buying the house from his clients and paying them an additional $5000 — he used his funds in an attempt to cover his mistake and placate his clients. Similarly, Respondent had encouraged his client to proceed with the cases and not accept the offer at mediation because Respondent wanted to be paid his attorney’s fees. When the results were not entirely favorable at the lower court level and when Saltsgaver lost the appeal, Respondent agreed to pay part of Caldevilla’s appellate attorney’s fees to encourage Newman to proceed with another appeal. Based on Jasperson, we conclude that Respondent violated rule 4 — 1.8(e) by telling Newman that he would pay part of the appellate attorney’s fees if Newman would proceed with the cases on appeal, and then by paying a portion of those fees.[2]
*1017 Next, Respondent argues that the phrase “expenses of litigation” in rule 4-1.8(e) permitted him to pay the appellate attorney’s fees. While not binding, the comment to the rule does not support this argument. The comment provides:
Lawyers may not subsidize lawsuits ... brought on behalf of their clients, including making ... loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in litigation. These dangers do not warrant a prohibition on a lawyer advancing a client court costs and litigation expenses, including the expenses of medical examination and the reasonable costs of obtaining and presenting evidence ....
R. Regulating Fla. Bar 4-1.8 cmt. (2006).
The comment plainly states that lawyers should not subsidize their clients’ lawsuits (this does not refer to contingent fee cases, as those are addressed elsewhere in the rules). By his conduct, Respondent developed “too great a financial stake in the litigation.” Respondent had not been paid for his lower court efforts, so he decided to use his own funds to pursue the appellate cases through Caldevilla, as Respondent wanted to be awarded his attorney’s fees.
Further, the comment explains the phrase “litigation expenses” by providing an example of permissible litigation costs: the reasonable costs involved in obtaining and presenting evidence. The payment of another attorney’s fees is not listed as a permissible litigation expense.[3] Thus, the rule addresses recognized costs regarding evidence, not the fees of another attorney.
We conclude that Respondent violated rule 4-1.8(e) by paying a portion of the fees of appellate counsel. The determinative fact is that Respondent funded Calde-villa’s work because Respondent wanted to continue the litigation and win the cases. Although this arrangement could be beneficial for both Newman and Respondent, the fact that Respondent moved from representing his client in the lower court to being an individual with a significant stake in the outcome of the appeal and paying a noteworthy portion of another person’s attorney’s fees to pursue that appeal shows a violation of the rule. This is the very type of situation that the rule seeks to prevent. Respondent crossed the line from being an advocate for his client (at the trial level) to becoming an interested party (at the appellate level) by using his money to pay another attorney to pursue the cases so Respondent could receive his attorney’s fees. Accordingly, we approve the referee’s recommendation that Respondent be found guilty of violating rule 4-1.8(e).[4]
*1018 Third, Respondent challenges the referee’s recommendation of a one-year suspension, asserting that the recommended sanction is excessive and does not have a reasonable basis in existing case law.[5] Respondent argues that a ninety-day suspension is the appropriate discipline. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
In Florida Bar v. Rotstein, 835 So.2d 241 (Fla.2002), the respondent was the subject of three counts of disciplinary misconduct. In two of the counts, Rotstein had taken action against his clients in order to pursue his own financial interests. One client had retained Rotstein to represent her in a suit against a restaurant. The case settled at mediation for $500 and the client executed some of the settlement documents, but she refused to endorse the settlement check when she discovered that her proceeds would be $12.15. Rotstein filed a motion to enforce settlement without notifying the client, and without her knowledge or consent, thereby knowingly taking a position adverse to his client and violating the rules. Rotstein received a one-year suspension.
The facts in Rotstein are more egregious than the present case and there were slightly more rule violations found in Rotstein. However, like Rotstein, the instant Respondent knowingly engaged in actions that were adverse to his client in the very matters in which he was representing him. Rotstein, 835 So.2d at 245. Respondent manipulated his client into proceeding with the case, which was detrimental to Newman, merely so Respondent could have an opportunity to collect attorney’s fees and costs. We have stated that “[dishonesty and a lack of candor cannot be tolerated by a profession that relies on the truthfulness of its members.” Fla. Bar v. Korones, 752 So.2d 586, 591 (Fla.2000) (quoting Fla. Bar v. Graham, 605 So.2d 53, 56 (Fla.1992)).
In addition, Respondent has a significant aggravating factor — a disciplinary history for similar misconduct. The Court has stated that “cumulative misconduct of a similar nature warrants an even more severe discipline than might dissimilar conduct.” Fla. Bar v. Walkden, 950 So.2d 407, 410 (Fla.2007). The referee specifically noted that when Respondent represented his clients Whitney and Tran in the previous disciplinary case, his conduct was extremely similar to that in the current case. In that prior disciplinary case, Respondent’s attempts to obtain attorneys fees for representation of PIP claims were similar to his actions in representing Newman, as Respondent placed his interests above those of his clients. The facts of the present disciplinary proceeding show that Respondent deliberately proceeded with Newman’s cases, knowing that he had more of an interest in winning the appeal by Caldevilla than Newman. For that very reason, Respondent was willing to pay Caldevilla’s fees to pursue the appeal. Also, Respondent did not accurately inform Newman of the possible harm that *1019 could result from proceeding with the eases, and Newman did eventually incur harm as he was responsible for significant fees when the appeal was lost and Respondent did not fulfill his promise to indemnify his client. Respondent’s actions caused Newman to be held hable in an approximate amount of $200,000.[6] For these reasons, a more severe sanction is appropriate. See Fla. Bar v. Temmer, 753 So.2d 555, 559 (Fla.1999) (the respondent’s prior discipline was for similar misconduct, so his disciplinary history was particularly aggravating). Respondent has failed to realize, despite the previous case, that the Court will not tolerate attorneys who place their financial desires above the interests of their clients.[7]
Respondent has engaged in serious misconduct in the present case and caused his client actual harm. As Respondent has previously been before this Court for the same form of serious misconduct, and he has now harmed three clients by his continued misdeeds, we find that a one-year suspension is appropriate. Considering his past misconduct, Respondent should have been mindful of the Court’s announcement in Rotstein that “[i]n recent years, this Court has moved towards stronger sanctions for attorney misconduct,” when he engaged in misconduct regarding his client Newman. Rotstein, 835 So.2d at 245.
CONCLUSION
Accordingly, we approve the referee’s findings of fact, recommendations of guilt, recommended sanctions, and award of costs. Timothy Allen Patrick is hereby suspended for one year. The suspension will be effective thirty days from the filing of this opinion so that Patrick can close out his practice and protect the interests of existing clients. If Patrick notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Patrick shall fully comply with Rule Regulating the Florida Bar 3-5.1(g). Further, Patrick shall accept no new business from the date this opinion is filed until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Timothy Allen Patrick in the amount of $3,873.15, for which sum let execution issue.
It is so ordered.
PARIENTE, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., and LEWIS, J., concur in result.

. The other case was resolved in 2001 at the grievance committee level. Thus, it did not result in an order by the Court.

. The respondent in Florida Bar v. Rue, 643 So.2d 1080, 1081 (Fla.1994), was found guilty *1017 of violating rule 4-1.8(e). Rue had provided improper monetary advances to his clients for "living expenses.”

. The 2009 version of the rule was not in effect when Respondent engaged in the misconduct. The subsequent opinion of In re Amendments to the Rules Regulating the Florida Bar, 24 So.3d 63, 117 (Fla.2009), amended the comment to elaborate that expenses could include a “diagnostic medical examination used for litigation purposes." (Emphasis added.) Clearly, the rule focuses on the costs of obtaining and presenting evidence.

. Respondent asserts the referee’s recommendation that he violated rule 4-1.8(e) is unsupported and thus the recommendation that he violated rule 3-4.3 (general misconduct) should be disapproved. Respondent does not provide any separate arguments addressing the recommendation that he violated rule 3-4.3. As we find the referee’s recommendation that Respondent violated rule 4-1.8(e) is supported, we disagree with Respondent’s broad assertion that he did not violate rule 3-4.3.

. The parties agree that suspension is the appropriate sanction. On review, the issue in dispute is the length of the suspension.

. The referee found that Newman settled his loss for approximately one-third of this amount.

. The current referee found that Respondent acted with a dishonest or selfish motive.